1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DAVID WAYNE ELMORE,

11              Plaintiff,              No. CIV S-04-2657 GEB EFB P

12        vs.

13   TOM L. CAREY, et al.,

14              Defendants.            <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16        Plaintiff is a prisoner without counsel seeking relief for alleged civil rights violations.

17   *See* 42 U.S.C. § 1983.[1]  This action proceeds on the October 14, 2005, first amended complaint

18   in which plaintiff claims that defendants were deliberately indifferent to his serious medical

19   needs in violation of the Eighth Amendment.  In particular, he alleges the following: (1) on

20   August 8, 2000, defendant Dr. C. I. Hooper provided inadequate treatment for a shoulder injury

21   by only ordering x-rays and prescribing a muscle relaxer; (2) on June 14, 2001, defendant Dr.

22   Torella provided inadequate treatment for the same injury by prescribing a cortisone injection;

23   (3) on March 14, 2002, defendant Dr. Borges provided inadequate treatment for plaintiff's

24
25        [1]  Plaintiff also alleges defendants violated 42 U.S.C. § 1985.  His allegations clearly fail
     to state a claim under § 1985.  *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).
26   Furthermore, the court's February 2, 2006, order directing service of process did not find that
     plaintiff could proceed under the section.

shoulder injury by prescribing an anti-inflammatory medication; (4) on March 22, 2002, defendant Dr. Borges refused to prescribe an effective medication for plaintiff's shoulder pain; (5) on January 14, 2003, Dr. C. I. Hooper provided inadequate treatment for plaintiff's shoulder pain by prescribing another cortisone shot; (6) on June 17, 2003, defendant Dr. Wedell provided inadequate treatment for plaintiff's shoulder pain by ordering an M.R.I. and by prescribing a new medication; (7) on November 24, 2003, Dr. Wedell informed plaintiff that shoulder surgery was necessary, but delayed unreasonably by requiring plaintiff to obtain clearance from a cardiologist;  (8) on February 5, 2004, defendant Dr. B. Naku delayed plaintiff's receipt of shoulder surgery by prescribing Codeine #3 and requesting that plaintiff be seen by an orthopedist; (9) on March 7, 2004, defendant Dr. J. Rohrer failed to provide adequate treatment by refusing to prescribe pain medication more potent than the codeine; (10) on June 9, 2004, defendant Dr. Kofoed recommended surgery but delayed by requiring plaintiff to obtain clearance from a cardiologist; (11) Dr. Noriega was deliberately indifferent by failing adequately to respond to plaintiff's May 17, 2004, grievance that he had not yet seen an orthopedic specialist and that his pain medication was ineffective; (12) with respect to Dr. Traquina, plaintiff alleges, "Dr. Kofoed said that once the cardiologist cleared me the request for surgery would go to the Chief Medical Officer, Alvary C. Traquina, M.D."; and, (13) Dr. Noriega failed adequately to respond to plaintiff's May 17, 2004, grievance that he had not yet seen an orthopedic specialist and that his pain medication was ineffective.  All defendants move for summary judgment.  Plaintiff opposes the motion.  For the reasons explained herein, the court finds that defendants are entitled to the relief they seek.

**I.  Facts**

At all times relevant to this action plaintiff was a prisoner at California State Prison, Sacramento ("CSP-Sac.") and at California State Prison, Solano ("CSP-Solano").  Defendant Tom Carey was the warden at CSP-Solano.  Def. Carey Mot. for Summ. J., Carey Dec., ¶ 2.  He was not responsible for providing medical treatment to prisoners and had no control over

whether or when prisoners received medical care from prison staff.  *Id*., at ¶ 4.   Doctors Borges ,
Hooper, Turella and Wedell were physicians at CSP-Sac.  Defs.' Mot. for Summ. J., Borges
Dec., ¶ 2; Hooper Dec. ¶ 2; Turella Dec., ¶ 2; Wedell Dec., ¶ 2.   None of these defendants were
responsible for transferring prisoners or for scheduling surgery for prisoners.  Hooper Dec., ¶ 2,
4; Turella Dec., ¶ 4; Wedell Dec., ¶ 4; Borges Dec., ¶ 4.  Defendant Dr. Traquina was the Chief
Medical Officer ("CMO") at CSP Solano.  Defs.' Mot. for Summ. J., Traquina Dec., ¶ 2.  His
responsibilities included reviewing appeals with medical issues.  *Id*.   Traquina was not
responsible for scheduling surgeries or for transferring prisoners.  *Id*., at ¶ 7.  Defendant Doctors
Rohrer, Noriega and Naku were physicians at CSP-Solano.  Defs.' Mot. for Summ. J., Rohrer
Dec., ¶ 2; Noriega Dec., ¶ 2; Naku Dec., ¶ 2.  None of these three defendants was responsible for
scheduling surgeries or for transferring prisoners.  Rohrer Dec., ¶ 5; Noriega Dec., ¶ 6; Naku
Dec., ¶ 6.

On August 8, 2000, while plaintiff was confined at CSP-Sac., Dr. Hooper saw plaintiff
for right shoulder pain, apparently stemming from having torn a tendon playing baseball in 1997.
 Compl., at 2; Compl., Ex. E at 23. Dr. Hooper noted that plaintiff suffered from right bicipital
tendonitis and "RLO calcification."[2]  Compl., Ex. E at 23.   He ordered x-rays, prescribed
medication and directed plaintiff to return for a follow-up appointment on August 19, 2000.  *Id.*;
Hooper Dec., ¶ 3.

Plaintiff also suffers from a heart condition.  On June 14, 2001, he saw a cardiologist,
who found his heart condition to be under control.  Compl., Ex. E at 21.  Also on June 14, 2001,
defendant Dr. Turella saw plaintiff for right shoulder pain, which plaintiff reported to have been
diagnosed as bicipital tendonitis.  Compl., Ex. E at 22; Turella Dec., ¶ 3.  Dr. Turella noted that
plaintiff had chronic cardiovascular difficulties and his shoulder was tender, and he administered
a cortisone injection.  Compl., Ex. E at 22;  Turella Dec., ¶ 3.

---

[2]  No party explains this or any other medical term or condition.

On March 14, 2002, defendant Borges saw plaintiff for right shoulder pain and prescribed anti-inflammatory medication.  Compl., Ex. E at 20; Borges Dec., ¶ 3.  Dr. Borges saw plaintiff again on March 22, 2002, and on April 9, 2002, and each time prescribed pain medication. Compl., Ex. E, at 19, 20.

On January 14, 2003, Dr. Hooper saw plaintiff for right shoulder pain.  Compl., Ex. E, at 18.  Dr Hooper again noted that plaintiff suffered from bicipital tendonitis and prescribed a Cortisone injection.  Compl., Ex. E, at 18; Hooper Dec., ¶ 3.

On June 17, 2003, Dr. Wedell saw plaintiff for right shoulder pain.  Compl., Ex. E at 17; Wedell Dec., ¶ 3.  Dr. Wedell prescribed pain medication and ordered an MRI.  Wedell Dec., ¶ 3.  The exact medication is not legible in the medical records and Dr. Wedell, who admits he reviewed the records, does not state what he prescribed.  Compl., Ex. E at 17; Wedell Dec., ¶¶ 2, 3.  On another date in June 2003, someone, whose name is illegible, noted that plaintiff received his medication that day and that the "RT shoulder brace is pending."  Compl., Ex. E at 16.  On August 18, 2003, someone noted in plaintiff's medical file, "shoulder MRI pending."  *Id.*

On October 6, 2003, plaintiff complained to medical staff that the pain in his shoulder was severe.  Compl., Ex. E, at 15.  Someone, whose signature is illegible, also noted that plaintiff had a vessel blockage and his skin was pale.  Compl., Ex. E, at 15.  Whoever saw him noted, "health maintenance altered related to cardiac problems, call Dr. Borges - follow orders." Compl., Ex. E, at 15.  Plaintiff was transferred to Mercy Folsom, "Code III," and an EKG was done.  *Id.*

On November 4, 2003, Dr. Hooper saw plaintiff for right shoulder pain.  Compl., Ex. E, at 15.  Dr. Hooper noted that the results of plaintiff's September 18, 2003, MRI showed a "subtotal tear of supraspinatus tendon."  *Id*; Compl., Ex. J.  On November 24, 2003, Dr. Wedell examined plaintiff's shoulder and reviewed the MRI.  Wedell Dec., ¶ 3.  He recommended rotator cuff surgery, but in light of plaintiff's heart condition, required plaintiff to obtain a cardiologist's clearance first.  Wedell Dec., ¶ 3; Compl., Ex. E, at 14.  Dr. Wedell did not believe

that plaintiff's shoulder condition was "urgent or emergent."  Wedell Dec., ¶ 3.  Rather, the

condition was chronic and the surgery was considered elective.  *Id*.  Plaintiff therefore was

referred to a cardiologist to obtain clearance for surgery.  *Id.*

A December 10, 2003, notation in plaintiff's medical file states that he was "due for

transfer to CMF due to amount med problems, needs shoulder surgery - will cont PPI."  Compl.,

Ex. E, at 13.  The signature below this notation is illegible.  It appears that plaintiff was not

transferred to CMF.  Rather, on January 26, 2004, he was transferred to CSP-Solano.  *See*

Compl., Ex. M.  On February 5, 2004, Dr. Naku examined plaintiff and prescribed codeine.

Naku Dec., ¶ 4; Compl., Ex. E, at 12.   Dr. Naku noted that plaintiff was 47 years of age, had a

history of "significant" hypertension, dyshpidema, Hepatitis C, hiatel hernia, and that he was

awaiting shoulder surgery and taking Ultram for right shoulder pain.  *Id*.  Dr. Naku discontinued

the Ultram in favor of Tylenol #3.  *Id*.   He also submitted a request for plaintiff to be examined

by an orthopedic specialist, and categorized the request as "routine."  Compl., Ex. F.  On

February 24, 2004, plaintiff was seen for right shoulder pain with "MRI verification," and it was

noted that Dr. Naku refused to prescribe T3 or "any narcotic" "due to pt's status as a heroin

addict."  Compl., Ex. E, at 11.  Plaintiff was offered Ultram or ibuprofen but refused.  *Id.*

On February 25, 2004, plaintiff filed a grievance complaining that his transfer caused his

surgery to be delayed and that he no longer received pain medication because Dr. Naku did not

want to prescribe narcotics.  Compl., Ex. A.  In response, Dr. Naku explained that he had

requested that plaintiff be seen by an orthopedic specialist and promised that plaintiff's pain

would "be adequately controlled."  Compl., Ex. A.

On March 7, 2004, defendant Rohrer examined plaintiff for right shoulder pain.  Rohrer

Dec., ¶ 3.  Plaintiff asserts that he told defendant Rohrer that the Tylenol  #3 was ineffective.

Compl., at 4-5.  Defendant Rohrer offered to add a non-steroidal anti-inflammatory medication,

believing that a stronger narcotic "was not clinically indicated under the circumstances."  Rohrer

Dec., ¶ 4.  On March 16, 2004, plaintiff was prescribed Tylenol #3 for his shoulder pain.

1   Compl., Ex. E, at 9.  On April 7, 2004, plaintiff complained of severe right shoulder pain, and

2   Dr. Naku renewed plaintiff's Tylenol #3 prescription.  Compl., Ex. E, at 8.

3        On April 14, 2004, plaintiff filed a grievance complaining that he still had not seen an

4   orthopedic specialist, and that he should not have to see one because he had been approved for

5   surgery before he was transferred to CSP-Solano.  Compl., Ex. B.  In response, he was informed

6   that the waiting list to see the orthopedic specialist was one year, except for cases designated as

7   "urgent."  Compl., Ex. B.

8        On May 8, 2004, plaintiff complained to defendant Naku that he had not yet seen an

9   orthopedic specialist.  Naku Dec., ¶ 3.  Defendant Naku ordered an orthopedic consultation.  *Id.*

10   Compl., Ex. E, at 10.  He noted that plaintiff was requesting "adequate pain control" and to be

11   "evaluated for ortho."  *Id.*   He also noted that an MRI of plaintiff's right shoulder showed a

12   "subtotal tear of the supraspinatus tendon," and that plaintiff denied substance abuse in the past

13   ten years.  *Id.*  Dr. Naku prescribed Tylenol # 3.  *Id.*

14        On May 17, 2004, plaintiff filed a grievance complaining that he still had not seen an

15   orthopedic specialist and that the pain medication he was using was ineffective.  Compl., Ex. C.

16   Dr. Noriega reviewed this grievance on the first formal level of review.  Noriega Dec., ¶¶ 3-4;

17   Compl., Ex. C.

18        On June 9, 2004, Dr. Koefed saw plaintiff to review with him the MRI report dated

19   September 16, 2003.  Compl., Ex. E, at 7.  Dr. Kofoed informed that the results, i.e., a "subtotal

20   tear of supraspinatus tendon" with "approximately 1 cm medial retraction,"  were "quite

21   serious."  Kofoed Dec., ¶ 3; Compl., Ex. E, at 7.  Like Dr. Wedell of CSP-Sac, Dr. Kofoed

22   recommended rotator cuff surgery and told plaintiff he needed a cardiologist's approval before

23   he would be placed on the waiting list for surgery.  Kofoed Dec., ¶¶ 3, 4.  He referred plaintiff to

24   a cardiologist and prescribed Tylenol #3.  Compl., Ex. E, at 7.  Dr. Kofoed believed that

25   plaintiff's condition was chronic, as opposed to urgent or emergent.  Kofoed Dec., ¶ 4.  Dr.

26   Kofoed noted that plaintiff  was known to have a torn tendon as of September 1997, and that he

1   ruptured it while pitching baseball.  Compl., Ex. E, at 7.  On June 10, 2004, plaintiff was

2   approved for surgery, but no date had been set.  Compl., Ex. O.

3          On June 30, 2004, Dr. Noriega examined plaintiff and interviewed him about the May 17,

4   2004, appeal.  He verified that plaintiff had been seen by Dr. Kofoed, the orthopedic specialist,

5   and that a request for surgery had been made June 8, 2004.  Noriega Dec. ¶ 5; Compl., Ex. C.

6   Dr. Noriega also increased plaintiff's Darvocet prescription in an effort to control plaintiff's pain

7   and obtained a sling for plaintiff.  Noriega Dec., ¶ 5. Compl., Ex. C; Compl., at 8.

8          Plaintiff returned to Dr. Kofoed on July 20, 2004.  Compl., Ex. E, at 6; Kofoed Dec., ¶ 3.

9   Plaintiff reported that although he had not yet seen the cardiologist, he recently had undergone

10  an EKG.  Kofoed Dec., ¶ 3. Dr. Kofoed iterated that plaintiff must see a cardiologist before

11  surgery, and explained that the surgery likely would be in August of 2004.  Kofoed Dec., ¶ 3. A

12  July 29, 2004, notation, which is mostly illegible, suggests that plaintiff surgery was pending

13  "cardiologist approval."  Compl., Ex. E, at 5.

14         On August 2, 2004, Dr. Traquina responded to plaintiff's May 17, 2004, grievance on the

15  second formal level of review.  Dr. Traquina reviewed plaintiff's medical records, and found that

16  several physicians, including Dr. Kofoed, had seen plaintiff.  Compl., Ex. C; Traquina Dec., ¶ 6.

17  He also determined that medical staff had reviewed the results of X-rays and the MRI, increased

18  plaintiff's Darvocet dosage and recommended rotator cuff surgery.  Compl., Ex. C; Traquina

19  Dec., ¶ 6.   He informed plaintiff that on July 20, 2004, Dr. Kofoed ordered plaintiff to see a

20  cardiologist to be approved for surgery, and that on July 29, 2004, an urgent request for a

21  cardiological evaluation had been submitted.  Compl., Ex. C; Traquina Dec., ¶ 6.  Defendant

22  Traquina determined that adequate care had been provided.  *Id.*  Therefore, there was nothing

23  more he could do.  *Id.*

24         On August 12, 2004, plaintiff was seen in the cardiology clinic.  The cardiologist found

25  that plaintiff was "clinically stable" with "no new symptoms," and cleared plaintiff for surgery.

26  Compl., Ex. E, at 4.  On August 24, 2004, Dr. Kofoed performed plaintiff's surgery. Compl., Ex.

E, at 2, Ex. K; Kofoed Dec., ¶ 4.  Plaintiff saw Dr. Kofoed for a follow-up appointment on

August 27, 2004, at which time Dr. Kofoed prescribed plaintiff  a five-day course of Oxycontin

for pain, followed thereafter by Motrin and Darvocet., and advised plaintiff to use a towel for

resistance exercises.  Compl., Ex. E, at 2; Kofoed Dec., ¶ 3.

## II.  Standards on Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the

movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986).[3]  The utility of Rule 56 to determine whether there is a

"genuine issue of material fact," such that the case must be resolved through presentation of

testimony and evidence at trial is well established:

> [T]he Supreme Court, by clarifying what the non-moving party
> must do to withstand a motion for summary judgment, has
> increased the utility of summary judgment. First, the Court has
> made clear that if the nonmoving party will bear the burden of
> proof at trial as to an element essential to its case, and that party
> fails to make a showing sufficient to establish a genuine dispute of
> fact with respect to the existence of that element, then summary
> judgment is appropriate.  *See Celotex Corp. v. Catrett*, 477 U.S.
> 317 (1986).  Second, to withstand a motion for summary judgment,
> the non-moving party must show that there are "genuine factual
> issues that properly can be resolved only by a finder of fact
> because they may reasonably be resolved in favor of either party."
> *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis
> added).  Finally, if the factual context makes the non-moving
> party's claim implausible, that party must come forward with more
> persuasive evidence than would otherwise be necessary to show
> that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v.
> Zenith Radio Corp.*, 475 U.S. 574 (1986).  No longer can it be
> argued that *any disagreement* about a material issue of fact
> precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert.*

*denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added).  In short, there is no

---

[3]  On October 5, 2004, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

1   "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to

2   establish the existence of an element essential to that party's case, and on which that party will

3   bear the burden of proof at trial."  *Grimes v. City and Country of San Francisco*, 951 F.2d 236,

4   239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).  There can be no genuine issue as to any

5   material fact where there is a complete failure of proof as to an essential element of the

6   nonmoving party's case because all other facts are thereby rendered immaterial.  *Celotex,* 477

7   U.S. at 323.

8        With these standards in mind, it is important to note that plaintiff bears the burden of

9   proof at trial over the issue raised on this motion, i.e., whether the defendant acted with

10  deliberate indifference to the plaintiff's safety.  Equally critical is that "deliberate indifference"

11  is an essential element of plaintiff's cause of action.  Therefore, to withstand defendant's motion,

12  plaintiff may not rest on the mere allegations or denials of his pleadings.  He must demonstrate a

13  genuine issue for trial.  *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989).  He

14  must rely on evidence based upon which a fair-minded jury "could return a verdict for [him] on

15  the evidence presented."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.

16  **III.  Analysis**

17        "As to materiality, the substantive law will identify which facts are material.  Only

18  disputes over facts that might affect the outcome of the suit under the governing law will

19  properly preclude the entry of summary judgment."  *Id.* at 248.  Here, plaintiff's action arises

20  under 42 U.S.C. Section 1983 and the Eighth Amendment.  To prevail at trial, he must prove that

21  the defendants deprived him of his Eighth Amendment rights while acting under color of state

22  law.  To prove an Eighth Amendment violation, plaintiff must show by a preponderance of

23  competent evidence that the defendants knew plaintiff had a serious medical need and were

24  "deliberately indifferent" to it.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Farmer v. Brennan*,

25  511 U.S. 825, 834, 837 (1994).  The court notes that the parties do not dispute that plaintiff's

26  shoulder pain was a serious medical need.  *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60

9

1   (9th Cir. 1992) (chronic and substantial pain is a serious medical need),  *overruled on other*

2   *grounds*, *WMX Techs., Inc. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).

3   Accordingly, for purposes of summary judgment, the court finds that plaintiff's right shoulder

4   pain is a serious medical need.  However, as discussed below, plaintiff has failed to establish a

5   genuine dispute for trial over whether any defendant was deliberately indifferent to it.

6        **A.  Dr. Hooper's August 8, 2000, Treatment**

7        Plaintiff claims that on August 8, 2000, defendant Dr. Hooper was deliberately

8   indifferent to his shoulder pain by ordering x-rays and prescribing a muscle relaxer.  Defendant

9   contends that plaintiff cannot prove he was deliberately indifferent.  Deliberate indifference may

10  be shown by the denial, delay or intentional interference with medical treatment or by the way in

11  which medical care is provided.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

12  Prison personnel risk Eighth Amendment liability if they knowingly prescribe specifically

13  contraindicated medications, fail to treat a known, serious medical condition or ignore a

14  physician's prescribed treatment.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989);

15  *Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989); *Wakefield v. Thompson*, 177 F.3d 1160

16  (9th Cir. 2003).  However, negligence in diagnosing or treating a medical condition, does not

17  violate a prisoner's Eighth Amendment rights.  *Hutchinson*, 838 F.2d at 394.  Plaintiff alleges

18  that defendant Hooper should have provided treatment other than x-rays and a muscle relaxer.

19  To survive summary judgment on such a claim, plaintiff must submit evidence that Hooper knew

20  plaintiff's treatment was medically unacceptable under the circumstances and administered it in

21  conscious disregard of an excessive risk to plaintiff's health.  *Jackson v. McIntosh*, 90 F.3d 330,

22  331 (9th Cir. 1996).  The medical records attached to plaintiff's complaint show that plaintiff

23  originally injured his right shoulder in 1997, while playing baseball.  It is unclear whether Dr.

24  Hooper knew the etiology of plaintiff's shoulder pain.  However, he examined plaintiff and

25  rendered a diagnosis for which he provided treatment.  Plaintiff concedes as much.  Although it

26  is undisputed that Dr. Hooper's diagnosis missed the mark, there is no evidence that this resulted

1  from anything but alleged negligence.  There is no evidence that plaintiff's symptoms were

2  inconsistent with bicipital tendonitis or that Dr. Hooper knew plaintiff's symptoms warranted an

3  MRI, yet he ignored that fact.  Neither is there any evidence that the diagnostic measures or the

4  course of treatment he selected was medically unacceptable or that it posed any risk to plaintiff's

5  health.  On this evidence, no reasonable jury could find that defendant Hooper was deliberately

6  indifferent to plaintiff's shoulder pain.

7         **B.  Dr. Torella's June 14, 2001, Treatment**

8         Plaintiff alleges that Dr. Torella was deliberately indifferent to plaintiff's shoulder pain

9  by prescribing a cortisone injection.  Plaintiff asserts that Dr. Turella should have known that

10 plaintiff did not suffer from bicipital tendonitis because the x-rays did not reveal any injury.  Dr.

11 Torella asserts that plaintiff cannot prove deliberate indifference.  With respect to this claim, it is

12 important to reiterate that "a complaint that a physician has been negligent in diagnosing or

13 treating a medical condition does not state a valid claim of medical mistreatment under the

14 Eighth Amendment."  *Estelle*, 429 U.S. at 106.  Furthermore,  "[a] medical decision not to order

15 [diagnostic] measures does not represent cruel and unusual treatment."  *Id.*, at 107.  It is

16 undisputed that Dr. Torella prescribed and administered the cortisone injection.  It also is

17 undisputed that at this point plaintiff still had not had an MRI.  Therefore, Dr. Torella did not

18 know the exact nature of plaintiff's shoulder injury.  However, he examined plaintiff in light of

19 Dr. Hooper's diagnosis and plaintiff's report that pain  was "getting worse."  Neither party

20 submits any evidence about the symptoms of bicipital tendonitis or whether they are similar to or

21 distinct from the injury plaintiff later was found to have.  The record is wholly devoid of any

22 evidence about the effects of cortisone or the sorts of injuries for which doctors ordinarily

23 prescribe it.  It also is devoid of any evidence of  when cortisone medically is unacceptable.

24 However, the medical records show that Dr. Torella considered plaintiff's cardiovascular

25 condition in connection with his examination of and treatment decision for plaintiff.  While not

26 necessarily related to plaintiff's pain *per se*, this suggests that Dr. Torella gave plaintiff

1  individualized consideration and treatment, as opposed to ignoring plaintiff's needs.  Thus, even

2  if Dr. Torella was negligent, no reasonable jury could find that defendant Torella was

3  deliberately indifferent to plaintiff's shoulder pain.  Dr. Torella is entitled to judgment as a

4  matter of law on this claim.

5      **C.  Dr. Borges' March 14, 2002, Treatment**

6      Plaintiff alleges that on March 14, 2002, Dr. Borges was deliberately indifferent to

7  plaintiff's shoulder pain by prescribing an anti-inflammatory medication.  Defendant Borges

8  asserts that plaintiff cannot prove deliberate indifference.  It is undisputed that Dr. Borges

9  prescribed an anti-inflammatory medication for plaintiff's shoulder.  The medical record

10  attached to plaintiff's complaint is illegible.  Dr. Borges does not in his declaration explain what

11  anti-inflammatory he prescribed or explain the medical reasons for his decision.  However,

12  plaintiff has the burden of proving that an anti-inflammatory medication was either

13  contraindicated or so medically unacceptable under the circumstances to as to amount to either

14  ignoring plaintiff's condition or interfering with prior physicians' prescribed treatment.  Plaintiff

15  submits no such evidence.  On this evidence, no reasonable jury could find in plaintiff's favor.

16  Dr. Borges is entitled to judgment as a matter of law on this claim.

17      **D.  Dr. Borges' March 22, 2002, Treatment**

18      Plaintiff alleges that on March 22, 2002, defendant Dr. Borges refused to prescribe an

19  effective pain medication.  Plaintiff asserts that once he told Dr. Borges that the pain medication

20  was not effective, Dr. Borges was required to explore other treatment options.  Dr. Borges

21  asserts that plaintiff cannot prove deliberate indifference.  It is undisputed that on this date, Dr.

22  Borges examined plaintiff for complaints of right shoulder pain.  Once again, the medical

23  records from this date are illegible and Dr. Borges offers no explanation of his evaluation and

24  treatment decisions.  Thus, other than assuming that Dr. Borges was aware of Dr. Hooper's

25  diagnosis, there is no evidence of what defendant Borges knew about plaintiff's shoulder injury,

26  whether he considered other treatment options and if so, why he rejected them.  As noted above,

plaintiff has the burden of proving deliberate indifference by a preponderance of the evidence. Here, there is no evidence whatsoever. Therefore, no reasonable jury could find in his favor and defendant Dr. Borges is entitled to judgment as a matter of law on this claim.

**E.  Dr. Hooper's January 14, 2003, Treatment**

Plaintiff claims that Dr. Hooper was deliberately indifferent to his shoulder pain by prescribing another cortisone injection. He asserts that defendant Hooper should have realized by this time that plaintiff did not suffer from tendonitis. Defendant Hooper contends that plaintiff cannot prove deliberate indifference. Dr. Hooper concedes that he examined plaintiff that day, still believed plaintiff suffered from bicipital tendonitis and prescribed a cortisone injection. There is no evidence in the record about the nature of bicipital tendonitis, how receptive it is to treatment, or how long the condition can last. Furthermore, as with his other claims against this defendant, plaintiff has not submitted any evidence that Dr. Hooper knew that the chosen course of treatment would be ineffectual, or that it was contraindicated yet administered it anyway. Thus, no reasonable jury could find that Dr. Hooper was deliberately indifferent to plaintiff's shoulder pain and Dr. Hooper is entitled to judgment as a matter of law on this claim.

**F.  Dr. Wedell's June 17, 2003, Treatment**

Plaintiff claims that Dr. Wedell was deliberately indifferent to his shoulder pain by ordering an M.R.I. and by prescribing an additional pain medication, i.e., Ultram. Dr. Wedell asserts that plaintiff cannot adduce any evidence of deliberate indifference. It is undisputed that plaintiff initially was diagnosed with bicipital tendonitis. While there is no evidence of whether plaintiff was engaged in any activities that prevented his shoulder from healing, it is clear that he repeatedly returned to physicians complaining of shoulder pain despite the physicians' prescribed medications. Plaintiff asserts, and defendant Wedell does not contest, that x-rays taken in 2000 did not reveal any abnormality. Thus, it appears perfectly reasonable that Dr. Wedell decided to see whether an additional painkiller would help plaintiff. It also appears

1  perfectly reasonable that he decided to order a new diagnostic test.  On this evidence, no

2  reasonable jury could find that Dr. Wedell was deliberately indifferent to plaintiff's serious

3  medical needs.  Dr. Wedell is entitled to judgment as a matter of law on this claim.

4  **G.  Dr. Wedell's November 24, 2003 Treatment**

5  Plaintiff complains that Dr. Wedell was deliberately indifferent to his shoulder condition

6  by requiring plaintiff to obtain clearance from a cardiologist before undergoing surgery.  He

7  asserts that since he had suffered from right shoulder pain for 34 months before obtaining the

8  MRI that demonstrated the true extent of his injury, once an accurate diagnosis was made the

9  surgery should not have been delayed.  Dr. Wedell contends that plaintiff cannot adduce

10  evidence to show that despite the delay, his decision to have a cardiologist determine plaintiff's

11  fitness to undergo surgery constituted deliberate indifference.  A delay in surgery to treat an

12  injury does not constitute deliberate indifference unless the delay causes further harm.  *Shapley*

13  *v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam) (delay in

14  surgery for injured knee).  It is undisputed that plaintiff suffered from cardiovascular disease,

15  and that  that in July of 2001, a cardiologist found plaintiff's condition to be under control.  But

16  it also is undisputed that in October of 2003, he suffered some sort of cardiac event that

17  warranted his hospitalization.  Plaintiff submits no evidence suggesting defendant Wedell knew

18  that requiring a cardiologist's evaluation was medically unacceptable.  Neither does he submit

19  any evidence that the delay aggravated his shoulder condition.  Furthermore, physicians

20  continued to prescribe pain medications in order to minimize plaintiff's discomfort.  On this

21  evidence, no reasonable jury could find that requesting a cardiologist's opinion before surgery

22  constituted deliberate indifference.  Defendant Dr. Wedell is entitled to judgment as a matter of

23  law on this claim.

24  **H.  Dr. Naku's February 5, 2004, Treatment**

25  Plaintiff claims that on February 5, 2004, defendant Naku unreasonably delayed

26  plaintiff's receipt of shoulder surgery by prescribing Codeine #3 and requesting that plaintiff be

14

seen by an orthopedic specialist.  Defendant Naku asserts that plaintiff cannot submit evidence to

demonstrating deliberate indifference.  It is undisputed that on November 24, 2003, Dr. Wedell

recommended surgery for plaintiff, pending approval by a cardiologist.  It also is undisputed that

on January 26, 2004, plaintiff was transferred from CSP-Sac to CSP-Solano.  There is no

evidence about who ordered plaintiff's transfer or why.  However, the evidence shows that Dr.

Naku was taking the same precaution as Dr. Wedell in light of plaintiff's cardiac condition.

Again, it is plaintiff's burden to prove that defendant knew that the evaluation was not necessary

and would cause injurious delay. Plaintiff has submitted no such evidence.  Furthermore, Dr.

Naku prescribed pain medication.  On this evidence, no reasonable jury could find in plaintiff's

favor.  Accordingly, Dr. Naku is entitled to judgment as a matter of law on this claim.

**I.  Dr. Rohrer's March 7, 2004, Treatment**

Plaintiff claims that Dr. Rohrer was deliberately indifferent to plaintiff's shoulder pain by

refusing to prescribe a pain medication more potent than codeine.  Plaintiff asserts that he told

Dr. Rhorer that codeine was ineffective but Dr. Rhorer, after consulting with Dr. Naku, told

plaintiff that a more potent medication would not be provided.  Defendant Dr. Rhorer asserts that

plaintiff cannot adduce evidence to demonstrate deliberate indifference.  It is undisputed that

plaintiff was in pain.  It also is undisputed that on February 5, 2004, Dr. Naku noted in plaintiff's

medical records that plaintiff's past heroin use impacted the nature of painkillers that plaintiff

should be prescribed.  Ordinarily, when there is a question about the advisability of a medication,

one wants physicians with knowledge about the patient and the medications to consult each other

in order to avoid any misstep.  Plaintiff, however, asserts that the consultation was designed to

deny plaintiff effective pain control.  But there is no evidence of this.  Furthermore, plaintiff

does not contest the evidence that he had a history of heroin addiction.  Nor does he submit

evidence that his past addiction should not inform current decisions about the sorts of

medications he ought to take.  Thus, even assuming that Dr. Rohrer consulted with Dr. Naku, on

the evidence before the court no reasonable jury could find that Dr. Rohrer was deliberately

1  indifferent to plaintiff's shoulder pain.  Accordingly, Dr. Rohrer is entitled to judgment as a

2  matter of law on this claim.

3  **J.  Dr. Kofoed's June 9, 2004, Treatment**

4  Plaintiff claims that defendant Kofoed unreasonably delayed plaintiff's undergoing

5  shoulder surgery by requiring plaintiff to first have a cardiologist clear him for surgery.  Dr.

6  Kofoed asserts that plaintiff cannot prove that he was deliberately indifferent by seeking the

7  opinion of a cardiologist.  As stated above, it is undisputed that plaintiff had a heart condition

8  and that he suffered a cardiac event requiring hospitalization in October of 2003.  Furthermore,

9  Dr. Wedell and Dr. Naku also had told plaintiff that he must undergo a cardiac evaluation before

10  surgery.  There is no evidence that plaintiff underwent such an evaluation before Dr. Kofoed

11  made the same decision.  On July 29, 2004, an urgent request to have plaintiff undergo a cardiac

12  evaluation was submitted, and on August 12, 2004, plaintiff underwent the evaluation.  The

13  cardiologist found that he was fit for surgery, and on August 24, 2004, Dr. Koefed performed the

14  surgery.  As with his claims against the other doctors, plaintiff submits no evidence that Dr.

15  Koefed knew that requiring a cardiologist's evaluation was contraindicated or that the delay

16  aggravated his shoulder condition.  Accordingly, there is no genuine issue about whether Dr.

17  Kofoed was deliberately indifferent.  He therefore is entitled to judgment as a matter of law.

18  **K.  Dr. Noriega's June 30, 2004, Treatment**

19  Plaintiff claims that Dr. Noriega was deliberately indifferent by failing adequately to

20  respond to plaintiff's May 17, 2004, grievance that he had not yet seen an orthopedic specialist

21  and that his pain medication was ineffective.  Dr. Noriega contends that plaintiff cannot prove he

22  was deliberately indifferent.  It is undisputed that by the time plaintiff filed his May 17, 2004,

23  grievance, he had complained about shoulder pain for almost four years.  Dr. Noriega reviewed

24  plaintiff's grievance on the on the first formal level of review.  He verified that the orthopedic

25  specialist, Dr. Kofoed, had examined plaintiff and that on June 8, 2004, a request for surgery had

26  been submitted.  Although he noted that plaintiff was on several medications that should have

16

1    the effect of easing plaintiff's discomfort, he increased the Darvocet dosage.  He also obtained a

2    sling for plaintiff.  On this evidence, no reasonable jury could find that Dr. Noriega knew of

3    plaintiff's condition and discomfort, yet failed to take reasonable measures to alleviate it.

4    Accordingly, Dr. Noriega is entitled to judgment as a matter of law.

5    **L.  Dr. Traquina's Alleged Delay of Plaintiff's Surgery**

6        Against Dr. Traquina, plaintiff alleges, "Dr. Kofoed said that once the cardiologist

7    cleared me the request for surgery would go to the Chief Medical Officer, Alvary C. Traquina,

8    M.D.."  Compl., at 6.  Based on this allegation, plaintiff claims that Dr. Traquina unreasonably

9    delayed his surgery.  To state a claim defendants provided constitutionally inadequate medical

10   care, plaintiff must allege acts or omissions evidencing identified defendants knew of and

11   disregarded plaintiff's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976);

12   *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Neither defendants' negligence nor plaintiff's

13   general disagreement with the treatment he received suffices to state a claim.  *Estelle*, 429 U.S.

14   at 106; *Hutchinson v. United States*,  838 F.2d 390, 394 (9th Cir. 1988); *Jackson v. McIntosh*, 90

15   F.3d 330, 331 (9th Cir. 1996).  Plaintiff does not allege that Dr. Traquina did or failed to do

16   anything.  Accordingly, he does not state a claim, and this claim must be dismissed.

17   **IV.  Liability of Defendant Carey**

18       Plaintiff asserts that defendant Carey is subject to liability because by statute this

19   defendant was charged with the overall operation of CSP-Solano.  Defendant contends that

20   plaintiff cannot prove he was involved with any health care decision challenged in this action.  A

21   supervisor is liable for constitutional violations of his subordinates if he participated in or

22   directed the violations, or knew of the violations and failed to act to prevent them, *Taylor v. List,*

23   880 F.2d 1040, 1045 (9th Cir. 1989), or if he implemented a policy so deficient that the policy

24   itself is a repudiation of constitutional rights and is the moving force of the constitutional

25   violation.  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989).  Plaintiff asserts, and defendant

26   Carey does not deny, that plaintiff notified Carey of his condition and allegedly inadequate

medical care.  Defendants Doctors Rohrer, Noriega and Naku, who worked at CSP-Solano, all concede that with respect to plaintiff's care and treatment, they acted within the bounds of institutional policy.  Furthermore, defendant Carey was, in fact, responsible for the overall operation of CSP-Solano, including formulating and executing programs for the care and treatment of prisoners.  However, defendant Carey is not a physician and is not involved in particular health care decisions with respect to specific prisoners.  There is no evidence that defendant Carey implemented any policy that dictated or caused Doctors Rohrer, Noriega and Naku to make the treatment decisions they made.  Nor is their any evidence of any act or omission on Carey's part that contributed to the decisions of those defendants.  On this evidence, no reasonable jury could find that defendant Carey was deliberately indifferent to plaintiff's serious medical needs.

Accordingly, it hereby is RECOMMENDED that:

1.  The October 27, 2006, motion for summary judgment filed by defendants Borges, Hooper, Turella and Wendell be granted and that judgment be entered in their favor;

2.  The October 27, 2006, motion for summary judgment filed by defendants Traquina, Naku, Kofoed, Noriega and Rohrer be granted and that judgment be entered in their favor;

3.  That the October 27, 2006, motion for summary judgment filed by Carey be granted and that judgment be entered in his favor; and

4.  The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

////

////

specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 14, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE